# IN THE SUPREME COURT OF IOWA

No. 11–0699

Filed June 1, 2012

**EMPLOYERS MUTUAL CASUALTY COMPANY,**

Appellee,

vs.

**LACINDA RANEE VAN HAAFTEN,**

Appellant.

Appeal from the Iowa District Court for Jasper County, Gary G. Kimes, Judge.

Defendant, an alleged embezzler, appeals the summary judgment in favor of her employer's subrogated insurer imposing civil liability under the doctrine of issue preclusion based on her *Alford* plea preceding a deferred judgment on the criminal theft charge. **AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**

Brent D. Rosenberg of Rosenberg & Morse, Des Moines, for appellant.

John F. Fatino and S. Luke Craven of Whitfield & Eddy, P.L.C., Des Moines, for appellee.

**WATERMAN, Justice.**

This appeal presents a question of first impression in Iowa: whether an *Alford* plea preceding a deferred judgment on a felony theft charge has preclusive effect in a subsequent civil action against the defendant to recover stolen funds. A secretary at Prairie City-Monroe Community School District (PCM), Lacinda Van Haaften, allegedly embezzled from a student activity fund and faced criminal charges. The district court accepted her *Alford* plea[1] to first-degree theft and entered a deferred judgment on that charge. PCM's subrogated insurer, Employers Mutual Casualty Company (EMCC), brought a civil action against Van Haaften to recover $66,749 it paid on the theft loss. The district court entered summary judgment in favor of EMCC in that amount, concluding Van Haaften's *Alford* plea precluded her from denying the theft or the amount. She appeals, contending her deferred judgment should have no res judicata effect in the civil case.

Our precedent allows third parties to use an *Alford* plea to preclude the defendant from relitigating essential elements of the criminal offense in a civil action because the district court is required under Iowa Rule of Criminal Procedure 2.8 to find the plea is supported by a factual basis. Van Haaften argues this precedent is inapplicable when a deferred judgment is granted. We disagree because the same judicial finding of a factual basis for the charge is required when the

---

[1]An *Alford* plea is a guilty plea entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S. Ct. 160, 168, 27 L. Ed. 2d 162, 171–72 (1970). "An *Alford* plea is a variation of a guilty plea. In effect, the pleas are the same as the defendant is agreeing to the imposition of a criminal sentence for the crime charged." *State v. Burgess*, 639 N.W.2d 564, 567 (Iowa 2001). The plea only differs from the traditional guilty plea "in that when a defendant enters an *Alford* plea, he or she does not admit participation in the acts constituting the crime." *Id.* at n.1.

district court enters a deferred judgment after the *Alford* plea. Accordingly, we hold the victim of a crime (or the victim's subrogated insurer) may invoke the doctrine of issue preclusion in a civil action based on the defendant's *Alford* plea regardless of whether the defendant successfully complies with the conditions for the deferred judgment on the criminal charge.

We conclude EMCC was entitled to summary judgment on liability, but not for the full amount of EMCC's claimed damages. The preclusive effect of her *Alford* plea is limited to $10,000, the minimum amount required to support a charge of first-degree theft. EMCC must prove damages in excess of that amount. Genuine issues of material fact precluded summary judgment in excess of $10,000.

Accordingly, we affirm the district court's summary judgment establishing Van Haaften's civil liability to EMCC for theft and for damages of $10,000 based on issue preclusion. We reverse the summary judgment in excess of that amount and remand for a trial on the remaining damages sought by EMCC.

## I. Background Facts and Proceedings.

Lacinda Van Haaften worked as a secretary and account manager for the athletic director at PCM beginning in May 2004. She was entrusted with day-to-day management of the "Student Activity Fund," including processing invoices, preparing account reports, and depositing collections. In March 2008, the school board discovered irregularities with the activity fund after Van Haaften overstated the fund's balance by more than $22,000. PCM hired the certified public accounting (CPA) firm Nolte, Cornman & Johnson P.C. to independently audit the account. The CPA firm investigated the account's internal controls and tested account deposits and disbursements against athletic event revenue and expenses.

The CPA firm's twenty-four-page, independent auditor's report concluded Van Haaften failed to deposit collections of $57,759.21 into the Student Activity Fund between September 1, 2004, and May 31, 2008.

The State charged Van Haaften by trial information with first-degree theft, a class "C" felony, under Iowa Code section 714.2(1) (2009). On June 1, 2010, the district court accepted Van Haaften's knowing and voluntary *Alford* plea of guilty to first-degree theft. During the colloquy, Van Haaften's attorney stated there was "evidence . . . not contained in the minutes of testimony that is exculpatory in nature" and "that if this matter went to trial" the defense would rely on that evidence "as a basis for . . . establishing reasonable doubt as to the defendant's guilt." The district court, in response, decided it would not accept Van Haaften's plea unless she denied that "the evidence that [she would] present before a jury [could] overcome . . . guilt beyond a reasonable doubt" as established in the minutes of testimony. Van Haaften's attorney agreed to take a ten-minute recess so he could discuss the plea with Van Haaften.

After the recess, Van Haaften admitted the minutes of testimony establish her guilt beyond a reasonable doubt and that she could not present evidence to create reasonable doubt. The district court then asked Van Haaften:

> [B]ased upon what you have told me, the minutes of evidence would establish as alleged in Count I that . . . you either directly committed or aided and abetted or conspired with another or entered into a common scheme . . . to unlawfully take possession and/or control of the property of another; to wit, deposits from the Prairie City Monroe Community School District Activity Fund totaling $57,759.21 with the intent to deprive the rightful owner thereof. Did you understand all of that?

Van Haaften responded, "Yes, your honor." Van Haaften's attorney responded, "Your honor, the record should reflect my client is tendering an *Alford* plea of guilty to that charge and I think she will acknowledge that is what she is doing." The district court accepted her plea.

The district court informed Van Haaften at the plea hearing that she has a right to file a motion in arrest of judgment to challenge the legality of the plea until sentencing and judgment is entered. Van Haaften did not file any motion challenging her plea. The district court held a sentencing hearing on July 12, six weeks after the plea colloquy, and entered a deferred judgment that placed Van Haaften on probation for three years and imposed a $1000 civil fine. The deferred judgment order stated:

> The Court upon questioning the Defendant has determined that the Defendant understands her rights and the consequences of such plea of guilty; that said plea was knowingly, intelligently, and voluntarily made and that there is an adequate factual basis for said plea. Accordingly, the Court has accepted said plea of guilty, finds the Defendant guilty of the crime alleged, and hereby enters judgment of guilty thereupon. Upon inquiry, no legal cause has been shown to prevent sentencing on this date.

EMCC provided insurance coverage to PCM and paid PCM $66,749 for losses caused by Van Haaften's theft. In return, PCM assigned its claims against Van Haaften to EMCC. On September 24, EMCC filed this equitable subrogation claim against Van Haaften to recover the $66,749 it paid to PCM. EMCC's amended petition alleged Van Haaften is precluded from relitigating her theft in this civil action. Van Haaften denied those allegations in her answer. EMCC moved for summary judgment on grounds that Van Haaften's guilty plea has preclusive effect. Van Haaften resisted. She supported her resistance with her affidavit denying the theft allegations, and she argued her deferred judgment is

not a final judgment for res judicata purposes.  On April 12, 2011, the district court after an unreported hearing granted EMCC's summary judgment by calendar entry.  On June 3, the district court entered judgment for $66,749.21 plus interest and costs.  Van Haaften timely filed her notice of appeal.

We retained the appeal to decide whether an *Alford* plea resulting in a deferred judgment has preclusive effect in a subsequent civil action.

## II.  Scope of Review.

We review a district court's summary judgment ruling for errors at law.  *Gardner v. Hartford Ins. Accident & Indem. Co.*, 659 N.W.2d 198, 201 (Iowa 2003).  Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Id.*  "Whether the elements of issue preclusion are satisfied is a question of law."  *Grant v. Iowa Dep't of Human Servs.*, 722 N.W.2d 169, 173 (Iowa 2006).  Issue preclusion therefore is appropriately adjudicated by summary judgment.  *See, e.g.*, *Brown v. Monticello State Bank*, 360 N.W.2d 81, 84 (Iowa 1984).  We view the evidence in the light most favorable to the nonmoving party.  *C & J Vantage Leasing Co. v. Outlook Farm Golf Club, LLC*, 784 N.W.2d 753, 756 (Iowa 2010).

## III.  Van Haaften's Guilty Plea Has Preclusive Effect.

Issue preclusion, sometimes referred to as collateral estoppel, is a form of res judicata.  *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571 (Iowa 2006).  Issue preclusion prevents parties " 'from relitigating in a subsequent action issues raised and resolved in [a] previous action.' "  *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 103 (Iowa 2011) (quoting *Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 (Iowa 1981)).  The doctrine "serves a dual purpose: to protect litigants from 'the "vexation of

relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation," ' and to further 'the interest of judicial economy and efficiency by preventing unnecessary litigation.' " *Haverly*, 727 N.W.2d at 571–72 (quoting *Am. Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163 (Iowa 1997)). Issue preclusion also " 'tends to prevent the anomalous situation, so damaging to public faith in the judicial system, of two authoritative but conflicting answers being given to the very same question.' " *Grant*, 722 N.W.2d at 178 (quoting Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on Its Theory, Doctrine, and Practice* 113 (2001)). A plaintiff may offensively use issue preclusion "in [a] second action [by relying] upon a former judgment against the defendant to establish an element of his or her claim." *Soults Farms, Inc.*, 797 N.W.2d at 104.

> The party invoking issue preclusion must establish four elements:
>
> "(1) the issue in the present case must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior case, and (4) the determination of the issue in the prior action must have been essential to the resulting judgment."

*Id.* (quoting *Fischer v. City of Sioux City*, 654 N.W.2d 544, 547 (Iowa 2002)); *accord Hunter*, 300 N.W.2d at 123. When issue preclusion is invoked offensively to establish an element of a claim, two additional considerations are present:

> "(1) whether the opposing party in the earlier action was afforded a full and fair opportunity to litigate the issues . . . , and (2) whether any other circumstances are present that would justify granting the party resisting issue preclusion occasion to relitigate the issues."

*Soults Farms, Inc.*, 797 N.W.2d at 104 (quoting *Fischer*, 654 N.W.2d at 547); *see also Hunter*, 300 N.W.2d at 126 (citing Restatement (Second) of

Judgments § 88 (Tentative Draft No. 2, 1975) (now Restatement (Second) of Judgments § 29 (1982))).

A determination must also be "final" for res judicata purposes to have preclusive effect. *Hunter*, 300 N.W.2d at 123 (citing *Goolsby v. Derby*, 189 N.W.2d 909, 913 (Iowa 1971)). But, "[t]he fact that a judgment is treated as final for purposes of res judicata does not necessarily mean that it is final for other purposes . . . ." Restatement (Second) of Judgments § 13 cmt. *b*, at 133.

Van Haaften concedes our precedent extends preclusive effect to *Alford* pleas in subsequent civil actions. *Aid Ins. Co. (Mut.) v. Chrest*, 336 N.W.2d 437, 440 (Iowa 1983) (applying preclusive effect to an *Alford* plea). Van Haaften argues *Aid Insurance Co. (Mutual)* is not controlling because it did not involve a deferred judgment on the criminal charge. She contends her deferred judgment is not a final judgment that supports issue preclusion. She also contends EMCC's offensive use of her *Alford* plea is improper under the circumstances of this case.

**A. The District Court's Finding of a Factual Basis for the Charge Underlying the Plea Is Sufficient for Issue Preclusion.** "The rule is well established in Iowa that a validly entered and accepted guilty plea precludes a criminal defendant from relitigating essential elements of the criminal offense in a later civil case arising out of the same transaction or incident." *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 244–45 (Iowa 2000) (citing *Teggatz v. Ringleb*, 610 N.W.2d 527, 529 (Iowa 2000)); *accord Aid Ins. Co. (Mut.)*, 336 N.W.2d at 440; *Ideal Mut. Ins. Co. v. Winker*, 319 N.W.2d 289, 296 (Iowa 1982)). We have allowed third parties to use a defendant's guilty plea against him in a civil action. *Ideal Mut. Ins. Co.*, 319 N.W.2d at 297.

In *Ideal Mutual*, this court overturned precedent that held criminal guilty pleas lacked preclusive effect in subsequent civil litigation. 319 N.W.2d at 296. We thoroughly analyzed the American Law Institute's Restatement (Second) of Judgments, the writings by Professor Allan Vestal, and developing caselaw in other jurisdictions. We concluded "[s]ubstantial support exists for the proposition that a guilty plea should be given preclusive effect against the accused." *Id.* at 291. We held the executor of the deceased's estate could use the defendant's second-degree murder plea to establish tort liability in a subsequent civil action for wrongful death. *Id.* at 297.

We determined a guilty plea, on its face, could satisfy the first, third, and fourth elements of our issue-preclusion test. *Id.* at 294–95. An element of a criminal offense is often identical to a civil tort issue (first element), material in both proceedings (third element), and essential to establish the offense (fourth element). *Id.* Only the "raised and litigated" requirement gave us pause because a guilty plea does not result from a trial. *Id.* But our concern was alleviated by our rule of criminal procedure that requires the district court to find the elements of the charged offense are supported by a factual basis before accepting a defendant's plea. *Id.* at 295; *see* Iowa R. Crim. P. 2.8(2)(*b*). We reasoned:

> [T]he effect of the factual basis rule is to require the existence of evidence sufficient to convince the trial court that the plea is founded on fact. Once a guilty plea is accepted, a judicial determination has thus been made with respect to the essential elements of the crime. We hold the factual basis requirement for guilty pleas is sufficient to meet the second requirement of our issue preclusion principle. We think a result is fair which precludes relitigation concerning an essential element of a crime when the accused has tendered a guilty plea . . . and the court has ascertained that a factual basis exists for the plea and accepts it.

*Ideal Mut. Ins. Co.*, 319 N.W.2d at 295.

One year later we extended *Ideal Mutual* to *Alford* pleas. *Aid Ins. Co. (Mut.)*, 336 N.W.2d at 440. The defendant attempted to distinguish *Ideal Mutual* by claiming his *Alford* plea was motivated by plea bargaining and that he maintained his innocence through his plea. *Id.* at 439–40. We rejected the argument, finding an *Alford* plea "indistinguishable" from a traditional guilty plea because each requires the district court to find a factual basis before accepting the plea. *Id.* at 440; *see also State v. Schminkey*, 597 N.W.2d 785, 792 (Iowa 1999) (vacating conviction and sentence resulting from *Alford* plea for lack of factual basis). We reasoned that a plea's preclusive effect "does not depend on the accused person's motivation in entering the guilty plea nor does it require the factual basis for the conviction to be established by the person's admissions. It merely requires a valid plea." *Aid Ins. Co. (Mut.)*, 336 N.W.2d at 440.

Accordingly, the district court's determination that a plea has a "factual basis" is the "judicial determination . . . made with respect to the essential elements of the crime" that has preclusive effect. *See Ideal Mut. Ins. Co.*, 319 N.W.2d at 295; *see also Aid Ins. Co. (Mut.)*, 336 N.W.2d at 440. Van Haaften does not ask us to overrule this well-established precedent but, instead, claims it is distinguishable because the pleas in those cases did not result in deferred judgments. We conclude that is a distinction without a difference here.

**B. A Deferred Judgment Does Not Alter the Finality of the District Court's "Factual Basis" Determination.** Van Haaften argues her plea that resulted in a deferred judgment does not have preclusive effect because it is not a final judgment for purposes of appeal. *See State v. Stessman*, 460 N.W.2d 461, 462 (Iowa 1990) (holding a deferred judgment is not a "final judgment of sentence" from which a defendant

may appeal under Iowa Code section 814.6).  Under Iowa law a deferred judgment

> means a sentencing option whereby both the adjudication of guilt and the imposition of a sentence are deferred by the court and whereby the court assesses a civil penalty as provided in section 907.14 upon the entry of the deferred judgment.  The court retains the power to pronounce judgment and impose sentence subject to the defendant's compliance with conditions set by the court as a requirement of the deferred judgment.

Iowa Code § 907.1.  It can be argued a deferred judgment is written in disappearing ink because, upon successful completion of the conditions set by the court and payment of fees, the defendant is discharged "without entry of judgment."  *Id.* § 907.3(1).[2]  Moreover, "the court's criminal record with reference to the deferred judgment shall be expunged."  *Id.* § 907.9(4).  Van Haaften's argument fails, however, because it is the court's factual-basis determination when accepting the plea that provides the plea's preclusive effect, not the subsequent sentence and deferred judgment.  The factual-basis determination is final for issue preclusion purposes.

Finality is a term of art for res judicata.  For example, interlocutory visitation orders subject to modification may have preclusive effect for res judicata purposes.  *See, e.g., Spiker v. Spiker*, 708 N.W.2d 347, 355 (Iowa 2006) (noting order granting continuing relief is "final" for res judicata purposes as long as there has been no substantial change in

---

[2]We acknowledge our decision today is the third within a year that recognizes collateral consequences based on the court's acceptance of the plea notwithstanding the defendant's deferred judgment.  *See Daughenbaugh v. State*, 805 N.W.2d 591, 592, 598 (Iowa 2011) (defendant lost federal pharmacy license as result of a plea to three felonies for taking prescription pills notwithstanding the deferred judgment); *State v. Deng Kon Tong*, 805 N.W.2d 599, 603 (Iowa 2011) (holding a guilty plea pursuant to a deferred judgment is a conviction for purposes of the felon-in-possession-of-a-firearm statute, Iowa Code section 724.26).

circumstance). And judgments are given res judicata effect during appeals. *Peterson* v. *Eitzen*, 173 N.W.2d 848, 850 (Iowa 1970) ("The judgment of the trial court is res judicata until set aside, modified or reversed."); *see also N. Star Steel Co. v. MidAmerican Energy Holdings Co.*, 184 F.3d 732, 737 (8th Cir. 1999) ("Under Iowa law, issue preclusion may be applied to a trial court's ruling on the merits of an issue despite the pendency of an appeal from that ruling."); Restatement (Second) of Judgments § 13 cmts. *c*, *f*, at 133, 135 (recognizing preclusive effect of judgments notwithstanding pending appeal or collateral attack). The Restatement defines "final judgment" to include "any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13, at 132.

Our cases are consistent with decisions in other jurisdictions that "have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4434, at 110–11 (2d ed. 2002) (collecting cases).

Finality for purposes of res judicata requires that a firm and considered decision has been made by the court:

> [T]o hold invariably that [finality] is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship . . . . In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. . . . Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision

was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.

Restatement (Second) of Judgments § 13 cmt. *g*, at 136. Example three illustrates how a preliminary ruling may be final for res judicata purposes:

> In a jurisdiction that permits "split" trials (a trial of liability followed, if liability is found, by a separate trial to ascertain the damages), the jury in a negligence case finds for the plaintiff A as to liability, the defendant B having denied his own negligence and pleaded contributory negligence on the part of A. Under the law of the jurisdiction, B cannot appeal at this point as there is no judgment that qualifies as final for that purpose; an appealable judgment would be reached later, when, in the second phase of trial, another jury assessed the damages. But prior to the second phase, the jury's verdict as to liability may be held conclusive as to the issues of A's and B's negligence in any other action between them in which the same issues appear.

*Id.* § 13 cmt. *g*, illus. 3, at 137.

The illustration is analogous to this case. Here, the district court was required under criminal procedure rule 2.8 to find a factual basis for Van Haaften's *Alford* plea before accepting the plea and later imposing sentence and judgment. Two separate judicial determinations are made—whether the plea is supported by a factual basis and, if so, the appropriate sentence and judgment. *See State v. Deng Kon Tong*, 805 N.W.2d 599, 601 (Iowa 2011) (distinguishing between adjudication of guilt "established . . . through a plea" and "postplea . . . judgment and sentencing" in construing the statutory term "conviction"). In this case, the district court made these separate determinations six weeks apart. Van Haaften had forty-five days to file a motion in arrest of judgment to

challenge her plea before sentencing but declined to do so. Iowa R. Crim. P. 2.24(3)(*b*).

We give preclusive effect to a guilty plea or *Alford* plea because the district court's factual-basis determination satisfies the "raised and litigated" element for issue preclusion. *Ideal Mut. Ins. Co.*, 319 N.W.2d at 295; *Aid Ins. Co. (Mut.)*, 336 N.W.2d at 440. Van Haaften observes those cases do not involve a deferred judgment. The issue preclusion analysis, however, does not turn on the sentence imposed. Rather, these cases apply issue preclusion based on the district court's "factual basis" determination for accepting the guilty plea or *Alford* plea.

The district court's factual-basis determination contains the hallmarks of res judicata finality—it is "subject to appeal," "adequately deliberated," and "procedurally definite." Restatement (Second) of Judgments § 13 cmt. *g*, at 136. The defendant may effectively appeal the district court's factual-basis determination by filing a motion in arrest of judgment within forty-five days of her plea. Iowa R. Crim. P. 2.24(3)(*a*) ("A motion in arrest of judgment is an application by the defendant that no judgment be rendered on a finding, plea, or verdict of guilty."). The district court cannot enter final judgment until fifteen days after the plea, thus ensuring the defendant an opportunity to challenge the plea. *Id.* r. 2.23(1). The district court's denial of the defendant's motion is an appealable ruling pursuant to Iowa Code section 814.6. *See, e.g., State v. Myers*, 653 N.W.2d 574, 581 (Iowa 2002) (reviewing district court's denial of motion in arrest of judgment for abuse of discretion); *State v. Speed*, 573 N.W.2d 594, 597–98 (Iowa 1998) (same).

The factual-basis determination "guarantees adequate exploration of the issues" and that "criminal liability is fully explored by the parties and the court and a judicial determination is made with respect to the

essential elements of the crime." *Ideal Mut. Ins. Co.*, 319 N.W.2d at 296. "We think a result is fair which precludes relitigation concerning an essential element of a crime when the accused has tendered a guilty plea . . . and the court has ascertained that a factual basis exists for the plea and accepts it." *Id.* at 295.

For these reasons, entry of a deferred judgment does not alter the preclusive effect of the district court's decision to accept a guilty plea. Accordingly, we hold the district court's factual-basis determination accepting her *Alford* plea was a final adjudication of the essential elements of Van Haaften's charge of first-degree theft.

**C. EMCC May Use Van Haaften's *Alford* Plea to Establish Her Civil Liability.** Van Haaften claims EMCC should not be permitted to use offensive issue preclusion in this case. In *Hunter*, we overturned long-standing precedent that required mutuality of parties. 300 N.W.2d at 125. We allowed the offensive use of issue preclusion unless the defendant "lacked a full and fair opportunity to litigate the issue in the first action or unless other circumstances justify affording him an opportunity to relitigate the issue." *Id.* The Restatement (Second) of Judgments identifies such other circumstances when it is inappropriate to allow offensive use of issue preclusion:

> (1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;

> (2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and that might likely result in the issue's being differently determined;

> (3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;

(4)  The determination relied on as preclusive was itself inconsistent with another determination of the same issue;

(5)  The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or was based on a compromise verdict or finding;

(6)  Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;

(7)  Other circumstances make it appropriate that the party be permitted to relitigate the issue.

*Id.* (quoting Restatement (Second) of Judgments § 88 (Tentative Draft No. 2, 1975) (now Restatement (Second) of Judgments § 29)).

Van Haaften argues the second and fifth circumstances militate against EMCC's offensive use of issue preclusion in this case because her plea was motivated by a desire to reduce her exposure to criminal penalty and she cannot appeal her deferred judgment.  We have, however, consistently allowed third parties to use guilty pleas offensively to impose liability on the defendant in subsequent civil actions.  *See Ideal Mut. Ins. Co.*, 319 N.W.2d at 297; *Aid Ins. Co. (Mut.)*, 336 N.W.2d at 440.  In *Aid Insurance Co. (Mutual)*, we expressly rejected the defendant's argument that offensive issue preclusion was improper because his *Alford* plea was motivated by a desire to reduce criminal punishment. 336 N.W.2d at 440.  We reasoned:

> The holding in [*Ideal Mutual*], however, does not depend on the accused person's motivation in entering the guilty plea . . . .  In fact, like Chrest, [the defendant in *Ideal Mutual*] sought to avoid issue preclusion in the subsequent civil action by alleging his plea was entered only because of the risk of conviction of a greater offense . . . .

*Id.*  Also, as earlier explained, Van Haaften had procedural mechanisms to appeal the district court's determination her plea was supported by a factual basis.  Iowa R. Crim. P. 2.24(3).  She chose not to appeal her

*Alford* plea. We adhere to our precedent permitting third parties to use a defendant's guilty plea offensively in a subsequent civil action.

For these reasons, we hold EMCC can use Van Haaften's *Alford* plea to first-degree theft to prevent Van Haaften from denying or relitigating the essential elements of that offense.

**D. The Essential Elements of Van Haaften's Plea.**
Van Haaften's plea to first-degree theft only has preclusive effect as to the essential elements of the offense. *Ideal Mut. Ins. Co.*, 319 N.W.2d at 296. This limitation is necessary to satisfy the elements of issue preclusion. *Id.* at 294 (requiring issues to be "identical" and "material and relevant" and "necessary and essential" in both proceedings). Van Haaften argues the amount of her theft *in excess of $10,000* is not an essential element of first-degree theft.[3] The district court rejected the argument and awarded EMCC judgment for $66,749.21.

First-degree theft is defined as the "theft of property exceeding ten thousand dollars in value." Iowa Code § 714.2. Theft is defined as "misappropriat[ion] [of] property . . . in the person's possession or control." *Id.* § 714.1. First-degree theft thus consists of two essential elements: (1) the misappropriation of property and (2) the property value must exceed $10,000. Van Haaften is precluded from denying either of these allegations in this subrogation action. EMCC, however, is alleging Van Haaften misappropriated $57,759.21 from PCM. The specific amount by which her theft exceeds $10,000 is not an essential element of first-degree theft. Her plea is valid whether she misappropriated $10,000.01 or $57,759.21; therefore, she had no incentive in the

---

[3]The parties stipulate Van Haaften preserved this argument by raising it before the district court at the unreported summary judgment hearing. Van Haaften renews the argument again on appeal. We therefore find the argument was properly preserved.

criminal proceeding to contest the amount by which her theft exceeded $10,000.

Our reasoning is consistent with the majority of courts considering the issue that have refused to preclude litigation of damages in excess of the threshold amount needed to establish the criminal offense. *United States v. Wight*, 839 F.2d 193, 196 (4th Cir. 1987) (holding that, because "the amount of his remuneration was not a necessary part of the plea agreement [to theft], the district court should not have estopped Wight from contesting the $70,107 amount"); *Appley v. West*, 832 F.2d 1021, 1026–27 (7th Cir. 1987) (holding defendant who pled guilty to embezzling $957,000 was not precluded from contesting damages in the civil action because the amount "was not a material fact of the indictment on which the guilty plea was based"); *United States v. Fletcher*, No. 502-CV-493-H3, 2005 WL 5290464 (E.D.N.C. Apr. 12, 2005) ("The greater weight of authority . . . counsels in favor of denying the use of collateral estoppel on the issue of damages where . . . the elements of the crimes did not include specific minimum amounts required to convict defendant of false claims."), *aff'd*, 205 F. App'x 155 (4th Cir. 2006); *State v. Thompson*, 908 P.2d 329, 331 (Or. Ct. App. 1995) (holding defendant's plea to indictment, alleging $8000 theft was not an admission to the theft amount). *But see Benedick v. Mohr*, 600 N.E.2d 63, 67 (Ill. App. Ct. 1992) (affording preclusive effect to a restitution order for theft because it "goes to the merits and forms a substantive part of the matter that is being litigated in a hearing before the court").

We hold Van Haaften's plea to first-degree theft does not preclude her from contesting the amount by which her theft exceeds $10,000.

**IV. A Genuine Issue of Material Fact Precludes Summary Judgment on the Amount of Her Theft Exceeding $10,000.**

EMCC argues that, even if Van Haaften's plea does not preclude her from contesting the theft amount, it is still entitled to summary judgment for $66,749.21 because Van Haaften's summary judgment resistance failed to create a material fact issue as to the theft amount. We disagree.

EMCC supported its motion for summary judgment with the transcript of Van Haaften's plea colloquy to establish her liability. *See Book v. Datema*, 256 Iowa 1330, 1337, 131 N.W.2d 470, 474 (1964) (admitting guilty plea to criminal operation of a motor vehicle as proof of negligence in civil action), *overruled on other grounds by Ideal Mut. Ins. Co.*, 319 N.W.2d at 296. Van Haaften did not claim the transcript of her plea colloquy was inadmissible. For the reasons addressed above, EMCC was entitled to summary judgment in the amount of $10,000 under the doctrine of issue preclusion based on Van Haaften's *Alford* plea accepted by the district court.

EMCC, however, failed to show it is entitled to summary judgment in excess of $10,000. EMCC attached several exhibits to its summary judgment motion to establish Van Haaften misappropriated $57,759.21 from PCM. Included is a press release issued by the CPA firm stating Van Haaften failed to deposit $57,759.21 into the Student Activity Fund, the CPA firm's independent auditor's report, and a copy of a $66,749.21 check EMCC paid to PCM for its loss. EMCC submitted no affidavit testimony to authenticate those exhibits and no expert testimony of a CPA to prove up the amount of the loss. Van Haaften objected that these exhibits were inadmissible hearsay. We agree those exhibits were insufficient to entitle EMCC to summary judgment for the amount of its claim above $10,000. *See* Iowa R. Civ. P. 1.981(5) (the moving party

"shall set forth such facts as would be admissible in evidence"); *see also Hildenbrand v. Cox*, 369 N.W.2d 411, 414 (Iowa 1985) (disregarding summary judgment affidavit because it was not supported by personal knowledge and would not be admissible in evidence).

Even when a motion for summary judgment is properly supported by admissible evidence, summary judgment should not be granted if the resisting party responds with "specific facts that show a genuine issue for trial." *Green v. Racing Ass'n of Cent. Iowa*, 713 N.W.2d 234, 245 (Iowa 2006); *accord* Iowa R. Civ. P. 1.981(5). Van Haaften's resistance was supported by her affidavit testimony denying she misappropriated funds. Her affidavit attached and discussed her bank and tax records. Her affidavit describes how she processed Student Activity Fund deposits and collections. She stated deposits were made directly by coaches during summer months and she did not exercise control over completed deposit slips. Her affidavit explains her asset purchases, bank deposits, and credit card activity during the relevant time period. Her affidavit stated her tax records provide an accurate reflection of her income during the relevant times. Her affidavit thus sets forth specific facts disputing her exclusive control of the student activity account and controverting the claim that her personal finances show a $57,759.21 misappropriation.

We must view the evidence in the light most favorable to the nonmoving party. *C & J Vantage Leasing Co.*, 784 N.W.2d at 756. We find Van Haaften's affidavit testimony creates a genuine issue of material fact as to the amount of the theft in excess of the $10,000 conclusively established by her *Alford* plea. *See Wernimont v. Wernimont*, 686 N.W.2d 186, 191 (Iowa 2004) (holding nonmoving party's affidavit created genuine issue of material fact as to the existence of an employment

relationship).  Accordingly, the district court erred in granting EMCC summary judgment for $66,749.21.

## V.  Disposition.

We affirm the district court's summary judgment establishing Van Haaften's civil liability to EMCC for theft and for damages of $10,000 based on issue preclusion.  We reverse the summary judgment in excess of that amount and remand for a trial on the remaining damages sought by EMCC.  Costs of this appeal are taxed equally to each party.

**AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**